AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court



for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*
**A MetroPCS/T-Mobile Samsung Model SM-G550T1 Smartphone**
**Serial Number 358329/08/173316/5 (Cell Phone 1);**

**A MetroPCS/T-Mobile LG Model LGMS210 Smartphone**
**Serial 704CYFT738603 (Cell Phone 2)**

Case No. 17-MJ- 612

## APPLICATION FOR A SEARCH WARRANT

I, WILLIAM F. MacMILLAN, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following property located in the Western District of New York *(identify the person or describe the property to be searched and give its location)*:
a MetroPCS/T-Mobile Samsung Model SM-G550T1 Smartphone Serial Number 358329/08/173316/5 (**Cell Phone 1**); and a MetroPCS/T-Mobile LG Model LGMS210 Smartphone Serial 704CYFT738603 (**Cell Phone 2**), which are currently in DEA custody and more particularly described in Attachment A.

The above-described property is believed to contain information that constitutes records, fruits, instrumentalities and evidence of a crime in violations of Title 21, United States Code, Sections 841(a)(1) and 846, and all of which are more fully described in Attachment B and the affidavit filed in support of this warrant, the allegations of which are adopted and incorporated by reference as if fully set forth herein.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of <u>Title 21, United States Code, Sections 841(a)(1) and 846</u>, and the application is based on these facts which are continued on the attached sheet:

- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S/A WILLIAM F. MacMILLAN
DRUG ENFORCEMENT ADMINISTRATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  July 12, 2017

*Judge's signature*

HONORABLE JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Rochester, New York

## ATTACHMENT A

### Description of Property to be Searched

The two cellular telephones to be searched are:

(a)     A MetroPCS/T-Mobile Samsung Model SM-G550T1 Smartphone Serial Number 358329/08/173316/5 (**Cell Phone 1**);

(b)     A MetroPCS/T-Mobile LG Model LGMS210 Smartphone Serial 704CYFT738603 (**Cell Phone 2**)

This warrant authorizes the forensic examination of the above-described cellular telephones for the purposes of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Schedule of Items to be Seized

All stored content related to the illegal purchase, possession or trafficking of narcotics, including content tending to prove relationships between co-conspirators or any acts furthering a narcotics trafficking conspiracy, including, but not limited to:

(a) Logs of incoming and outgoing telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

(b) Logs of missed telephone calls, and any information associated with those calls, including but not limited to, telephone numbers, the time of the call, the date of the call, the duration of the call, and the name or other identifying information for the other party to the call;

(c) Contact lists and address books, including names, addresses, telephone numbers, and other identifying information;

(d) Incoming and outgoing text messages;

(e) Content associated with stand-alone communication "apps" such as WhatsApp, Telegram, etc.;

(f) Notes or ledgers contained electronically;

(g) Appointment calendars;

(h) Voicemails; and

(i) Photographs and/or videos.

(Rev Final Version Approved by Mag. 5-4-04 - adding storage to electronic media)

## ADDENDUM TO SEARCH WARRANT
## SEARCH OF COMPUTERS OR OTHER ELECTRONIC STORAGE MEDIA

1.   The computer or electronic storage media search authorized by this warrant shall be completed within 60 days from the date of the warrant unless, for good cause demonstrated, such date is extended by Order of this Court.

2.   In conducting the search authorized by this warrant, the government shall make reasonable efforts to utilize computer search methodology to search only for files, documents or other electronically stored information which are identified in the warrant itself.

3.   Should the government not locate any of the items specified in the warrant (or other fruits, contraband, instrumentalities, or property subject to forfeiture) within the authorized search period (including any extensions granted), the government shall return the computer or electronic storage media to the owner.

4.   In any circumstance not covered by paragraph three (3) above, upon completion of the search, the government, upon request of the owner of the computer, ·shall promptly return to the owner of the computer copies of all files and documents requested and specified by the owner, excluding any items or files seized pursuant to the warrant or other fruits, contraband, instrumentalities or property subject to forfeiture.

5.   If electronically stored data or documents have been identified by the government pursuant to this warrant, or other fruits, contraband, instrumentalities or property subject to forfeiture, the· government may retain the original hard drive or other data storage mechanism pending further order of this Court. The retention of the original hard drive or other data storage mechanism does not relieve the government of its obligation to return to the owner of the computer files, documents or other electronically stored information identified in paragraph (4) above.

6.   Nothing in this warrant shall limit or prevent the government from retaining the computer or electronic storage media as fruits,    contraband or an instrumentality of a crime or commencing forfeiture proceedings against the computer and/or the data contained therein.   Nothing in this warrant shall limit or prevent the owner of the computer or electronic storage media from (a) filing a motion with the Court pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the Return of Property or (b) making a request of the government to return certain specified files, data, software or hardware.

7.   Should there be a dispute or question over ownership of any computer or electronic storage media or any electronically stored data or documents stored therein, the government shall promptly notify this Court so that such dispute or question can be resolved.

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

State of New York )
County of Monroe ) SS:
City of Rochester )

    **William F. MacMillan**, being duly sworn, deposes and states:

### Introduction and Agent Background

    1.    I am a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq., and Title 18 United States Code, Section 2516(1).

    2.    I have been employed with the DEA since June of 2010. Prior to my employment with the DEA, I served for approximately 4 years as an officer in the U.S. Coast Guard where, in addition to other responsibilities, I served as a boarding officer charged with enforcing maritime law enumerated in various sections of Titles 14, 18, 19, 33, and 46, of the United States Code. I have been assigned to the DEA Rochester Resident Office since November of 2010. Over the past 10 years, I have participated in numerous drug trafficking investigations ranging from high seas drug smuggling to the distribution of crystal methamphetamine in rural communities. Furthermore, I have been involved in the execution of numerous foreign/federal/state boardings and search warrants involving suspected narcotics trafficking.

3.     In connection with my work with the DEA, I have worked with federal, state, and local law enforcement officers in the Western District of New York.  These diverse personnel provide the DEA with an extensive breadth of experience and knowledge relating to illegal drug trafficking in the Western District of New York and elsewhere.  Based on my training and experience, I am familiar with the methods used by persons and drug trafficking organizations to purchase, transport, store, manufacture, package, and distribute drugs, and the means and methods used to hide profits generated from those transactions.  I am also familiar with the coded language and jargon used by persons engaged in narcotics trafficking to reference various narcotics and controlled substances, as well as the ways in which illicit drug sellers and users attempt to evade detection through counter-surveillance measures, the use of codes, cryptic phrases, abbreviated words and prearranged terminology, and the use of smart phones and other communications technology.

4.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – 2 cellular telephones which are currently in the possession of the DEA, and the extraction from that property of electronically stored information described in Attachment B.

5.     As a result of my personal participation in this investigation, and thorough analysis of documents and recorded phone calls, analysis of GPS geolocation data, and other evidence obtained by the DEA and other law enforcement agencies, and conversations with other law enforcement personnel, I am familiar with all aspects of this investigation.  Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, I have

not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to obtain the requested search warrant.

6.    Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that Thomas WILLIAMS and Julie COTA, and others, have committed a violation of 21 U.S.C. § 841(a)(1) (distribution of narcotics - methamphetamine), and there is probable cause to search the two cellular telephones described in Attachment A for evidence, contraband, and fruits of these crimes, as described in Attachment B.

## Identification of Property to be Searched

7.    The property to be searched consists of the following items, which were seized as evidence during a joint investigation by federal, state and local law enforcement authorities into the drug trafficking activities of WILLIAMS and COTA, and which are currently in the custody of the DEA in Rochester, NY:

(a)    A MetroPCS/T-Mobile Samsung Model SM-G550T1 Smartphone Serial Number 358329/08/173316/5 (**Cell Phone 1**);

(b)    A MetroPCS/T-Mobile LG Model LGMS210 Smartphone Serial 704CYFT738603[1] (**Cell Phone 2**).

---

[1] The IMEI printed on the back of **Cell Phone 2** is one digit different from what was stated on the affidavit to monitor geolocation data (357588-08-738603-6 printed on **Cell Phone 2** versus 357588-08-738603-0 on what T-Mobile/MetroPCS stated in their records). Agents did observe GPS geolocation data matching **Cell Phone 2's** location while driving away from California City, CA post-seizure and believe the IMEI discrepancy to merely be a typo/inaccuracy in T-Mobile/MetroPCS records.

3

## Facts Establishing Probable Cause

8.     On June 20, 2017, a Federal Grand Jury in the Western District of New York returned an indictment charging WILLIAMS and COTA with violations of 18 U.S.C. § 841 (distribution of narcotics - methamphetamine).   On June 26, 2017, WILLIAMS and COTA were located and arrested in the Eastern District of California.   On June 27, 2017, both WILLIAMS and COTA appeared before Magistrate Judge Jennifer L. Thurston in the Eastern District of California for initial appearance in Rule 5(c)(3) proceedings.   The defendants were ordered to be transported to the Western District of New York, where proceedings will commence upon their arrival.

9.     Since January of 2017, agents from the DEA Rochester Resident Office, in conjunction with investigators with the Livingston County Sheriff's Office (LCSO), have been conducting an investigation into a crystal methamphetamine distribution ring in Dansville, New York and surrounding areas.[2]   Through the investigation, it has been discovered that JULIE   COTA   (hereinafter   "COTA")   and   THOMAS   WILLIAMS   (hereinafter "WILLIAMS") have been sending large quantities of crystal methamphetamine from California into the Western District of New York since approximately January of 2017.

---

[2] Based on laboratory analysis of multiple drug exhibits seized over the course of this investigation, and upon my training and experience, the methamphetamine distributed by these individuals was not manufactured locally.  Rather, due to the type of crystal methamphetamine, it is likely sourced from a country known for the production of high-purity crystal methamphetamine, such as Mexico.  This crystalline version of methamphetamine often is smuggled from known source locations of the U.S., such as Arizona, Texas, or California, through a variety of methods, including parcel delivery services such as the U.S. Postal Service or Federal Express (Fed Ex).

10. On April 25, 2017, agents approached a Confidential Source (hereinafter ("CS-1")[3] at his/her residence, and CS-1 gave a voluntary statement admitting, in sum and substance, amont other things, that he/she had distributed approximately 3-5 pounds of crystal methamphetamine in the Western District of New York over the past 4-5 months, and that he/she got the methamphetamine from his/her supplier, "Tom in California," who "would mail the meth to [him/her] Fed Ex." CS-1 agreed to cooperate with law enforcement and has identified THOMAS WILLIAMS and JULIE COTA as his/her suppliers, both of whom are believed to be in California. CS-1 has continued to assist law enforcement officers with this investigation, including as follows in this affidavit.

11. On May 23, 2017, agents met with CS-1 for the purposes of showing CS-1 two photographic arrays. CS-1 was first presented a photographic array containing six unlabeled photographs, one of which was COTA's California DMV photograph. CS-1 then circled COTA's photograph, labeling it "Julie Cota" with a phone number of "1-760-577-4634." CS-1 was then presented a photographic array containing six unlabeled photographs, one of which was WILLIAMS' California DMV photograph. CS-1 then circled WILLIAMS' photograph, labeling it "Thomas Williams" and "Mudduck" with a phone number of "1-661-208-7216." CS-1 stated to agents that he/she has known WILLIAMS for over a decade during his/her time living in California and that he/she knows COTA to be WILLIAMS' long-term girlfriend.

---

[3] CS-1 was established as a cooperating source by the LCSO in April of 2017 following the federal arrests of Kurt REDANCE, Brandie SCHUMACHER, Andrew CULLITON, and Kenneth HOAG (17-MJ-4037). The information provided by CS-1 has been corroborated by the DEA and LCSO through independent investigation and by information received independently and separately from other law enforcement agencies. CS-1 has agreed to cooperate with the DEA and the LCSO in exchange for future sentencing consideration with regard to forthcoming federal controlled substance charges related to this investigation.

12.     Acting on the orders of controlling agents, CS-1 conducted multiple consensually recorded telephonic exchanges with COTA (COTA utilizing 760-577-4634) and WILLIAMS (WILLIAMS utilizing 661-208-7216).[4]  During these calls, they discussed past and ongoing drug trafficking activity, including conversations with both COTA and WILLIAMS about money CS-1 owed them for a prior shipment of methamphetamine he had previously received.

13.     Acting on the orders of controlling agents, through a number of consensually recorded telephone calls, CS-1 ordered an approximate half-pound shipment of methamphetamine from COTA and WILLIAMS, which they were to ship to him in Dansville, New York from California via Fed Ex.  On May 2, 2017, at approximately 6:05 p.m., an outgoing call from CS-1 to WILLIAMS was recorded in which WILLIAMS tells CS-1 that the "lucky number" is 7.  CS-1 asks if that is what they are sending, and WILLIAMS confirms, adding that COTA would be calling with the information.  On May 3, 2017, at approximately 8:10 p.m., an incoming phone call from Julie COTA to CS-1 was recorded, in which, in sum and substance, COTA stated to CS-1, "the bird has flew the coop," before passing the phone to an unknown subject with a Hispanic accent who stated the following number: "786451120906," which was determined to be associated with a Fed Ex tracking number.

---

[4] The calls were recorded, as they were made and received, by CS-1 using a handheld digital recording device. CS-1 provided the recordings to controlling officers, along with the dates and times they were made.  This information was corroborated by telephone metadata records obtained from CS-1's service provider pursuant to administrative subpoenas, which showed the times, durations, and phone numbers associated with the calls at the times reported by CS-1.

14.    On May 4, 2017, at approximately 11:25 a.m., agents seized a Fed Ex parcel addressed to CS-1 (CS-1's name was misspelled) bearing tracking number 786451120906 in Dansville, New York. The return information (address written on the upper left hand corner of the envelope) on this parcel indicated it was shipped from "Gus Thomson" at 3131 W Ave K4, Lancaster, CA 93536.[5] Inside of this parcel, hidden inside additional packaging[6], agents located and seized a resealable plastic bag containing approximately 249.0 grams of a crystalline substance. This crystalline substance was field-tested using a Methamphetamine/MDMA test kit, which indicated a positive result that the substance contained methamphetamine.    After completing the field test, the suspected crystal methamphetamine was transported to the DEA Rochester Resident Office, where it was packaged and shipped to the DEA Northeast Laboratory for analysis. In a report signed June 8, 2017, the DEA Northeast Laboratory indicated that this seized substance was in fact 216.4 grams of 99% pure d-methamphetamine HCL[7].

15.    Since May 4, 2017, at the direction of controlling agents, CS-1 has maintained contact with COTA and WILLIAMS via telephone, and those calls have continued to be recorded with CS-1's consent.  On May 28, 2017, CS-1 notified controlling agents that WILLIAMS had switched his number to 661-349-3791 and COTA had switched her number to 661-349-3791 (the Target Telephone number). In CS-1's continued telephonic contact with

---

[5] The last name "Thomson" and the address "3131 W Ave K4, Lancaster, CA 93536" closely resemble or match information associated with and used by WILLIAMS and COTA as discovered during this investigation, and as further outlined below in this affidavit.

[6] The packaging and opened parcel were maintained as evidence by the Livingston County Sheriff's Office, who processed it and sent it to the Monroe County Crime Laboratory for fingerprint analysis. Several partial fingerprints were recovered but could not be matched to fingerprints on file with the FBI for Julie COTA or Thomas WILLIAMS.

[7] This equals 214.2 grams amount of pure substance.

COTA and WILLIAMS, COTA and WILLIAMS discuss, among other things, their ongoing drug trafficking activity. As recently as June 4, 2017, COTA, on the Target Telephone line, has discussed sending more methamphetamine to CS-1. Specifically, she tells CS-1, in sum and substance, that she was going to obtain more methamphetamine from her source for another one of her customers, and she asks CS-1 if he/she wanted her to get some for him/her during that visit.

16.     During the course this investigation, agents have learned of three different phone numbers utilized by WILLIAMS in his communications with CS-1 and two different phone numbers utilized by COTA in her communications with CS-1. Agents served administrative subpoenas on the service provider, T-Mobile/Metro PCS, for all of these numbers, and obtained the following information:

| Actual User Known to Agents Through Investigation[8] | Phone Number | Activation Date | Subscriber Information | |
|---|---|---|---|---|
| | | | Name | Address |
| WILLIAMS[9] | 661-522-1516 | 10/02/16 | Tom Williams | 3131 West Ave R-4, Lancaster, CA 93536 |
| WILLIAMS | 661-208-7216 | 03/22/17 | Sue Thompson | 3131 W Avenue K4 Lancaster CA 93536-6610 |
| WILLIAMS | 661-349-3791 | 05/23/17 | Sue Thomas | 3131 W K-4 Lancaster, CA 93536 |

---

[8] CS-1 told agents these phone numbers belonged to WILLIAMS and COTA, respectively. Additionally, agents listened to recorded calls and determined the voices to be the same on the associated numbers, and during the recorded calls, WILLIAMS is referred to by name in recorded calls with both COTA and WILLIAMS. This information is further corroborated for certain numbers as noted.

[9] During this investigation, it was learned that 661-522-1516 was determined to be associated with Thomas WILLIAMS of Lancaster, California in a separate and ongoing investigation conducted by ATF and Kossuth County Sheriff's Office in Alcona, Iowa. Agents from the Rochester office called investigators in Iowa, who provided reports stating that Thomas WILLIAMS and Julie COTA were suspected to be supplying an individual in their district ("Iowa Target") with crystal methamphetamine. Based upon their investigation to date, the Iowa Target is suspected to have received parcels containing methamphetamine from Fed Ex shipped from COTA and WILLIAMS in Lancaster, California.

| COTA[10] | 760-577-4634 | 03/22/17 | Sue Thompson | 3131 W Avenue K4 Lancaster CA 93536-6610 |
|----------|--------------|----------|--------------|-------------------------------------------|
| COTA | 661-349-3605 | 05/23/17 | Sue Thomas | 3131 W K-4 Lancaster, CA 93536 |

17.     It is important to note that the first number used by WILLIAMS is actually subscribed to in his name; however, WILLIAMS stopped using this number to contact CS-1 shortly after he learned of the arrests of CS-1's customers in April of 2017. Additionally, the addresses used closely resembles the addresses provided for all four of WILLIAMS' and COTA'S phones activated on 3/22/17 and 5/23/17.   The addresses used also closely resemble the return address on the seized shipment of methamphetamine, "3131 W Ave K4, Lancaster, CA 93536," which listed a sender of "Gus Thomson."

18.     Based upon my training and experience, I know that traffickers of narcotics often change their telephone numbers in an attempt to confound law enforcement electronic surveillance efforts.  Additionally, drug traffickers often utilize cellular telephone accounts that are not subscribed to them, or are registered to names and addresses other than their own, in order to avoid detection by law enforcement officers and to avoid apprehension.   An inquiry with the California Department of Corrections indicated that WILLIAMS' mother in March of 2008 resided at "3131 WEST Avenue K-4 #101 LANCASTER, California 93536."

---

[10] Based upon a Facebook query performed on June 7, 2017, at approximately 3:26 pm, 760-577-4634 yields a Facebook page with a profile name of "Julie Neave Cota."

**June 26, 2017 Arrest of Julie COTA and Thomas WILLIAMS in California City, CA**

19.     On June 26, 2017, at approximately 2:19 pm (EST), an LCSO investigator placed a controlled, recorded phone call to COTA (661-349-3605) whereupon this investigator, posing as a truck driver coordinating delivery of a multi-thousand dollar drug debt owed by CS-1 to COTA and WILLIAMS, arranged to meet COTA at a truck stop gas station in Mojave, California. COTA stated that her name was "Julie" on the phone when asked. COTA then agreed to meet the investigator at the location. COTA further stated that she and another individual (based upon my knowledge of this case, Thomas WILLIAMS) would be on their way to meet him shortly. COTA stated that she and WILLIAMS would be arriving in a "red Ford Explorer."

20.     Several minutes later, agents from the DEA Bakersfield office observed COTA and WILLIAMS depart a condominium complex in California City, CA and approach an unoccupied, parked, red Ford Explorer bearing California registration 7TOG424[11] (hereafter the vehicle). At this point, agents converged upon WILLIAMS and COTA and arrested both without incident. WILLIAMS had opened the driver's side front door of the vehicle and was seated in the driver's side front seat when agents placed him in custody. Agents noted that within WILLIAMS' grab area, in plain view in the center console of the vehicle, was **Cell Phone 2**. **Cell Phone 2** was subsequently seized pursuant to WILLIAMS' arrest.

21.     Julie COTA was placed into custody by agents as well. Upon a search of COTA's purse that she had been holding, agents seized **Cell Phone 1**. Additionally located

---

[11] Per California DMV records, this vehicle is registered to Julie COTA.

within this purse, agents seized a glass pipe with suspected methamphetamine residue and a plastic bag containing a user amount of suspected crystal methamphetamine. Upon conducting a pat down search of WILLIAMS, agents located a glass pipe with suspected methamphetamine residue in WILLIAMS' left cargo pocket and a user amount of suspected crystal methamphetamine in WILLIAMS' left sock.

22.    **Cell Phones 1 & 2** were subsequently transferred to your affiant for their eventual transport back to the Rochester, NY DEA Office. WILLIAMS and COTA were transported to the U.S. Courthouse in Bakersfield, CA for their initial appearances. Both WILLIAMS and COTA were ordered by the Court in the Eastern District of California to be remanded to the custody of the U.S. Marshal's Service pending their transport back to the Western District of New York.

## COTA and WILLIAMS' Use of Cellular Phones to Further the Alleged Conspiracy

23.    COTA and WILLIAMS regularly utilized numerous cellular phones in furtherance of their drug trafficking activities, and evidence of such criminal activity is likely to be found on **Cell Phones 1 & 2**. Throughout the course of this investigation, your affiant has listened to over two dozen inbound and outbound recorded phone calls involving CS-1 and both Julie COTA and Thomas WILLIAMS, in which COTA and WILLIAMS discuss their drug trafficking activities. In the recorded phone calls, COTA also makes reference to other, as of now unknown, co-conspirators that assisted in the shipment of the crystal methamphetamine to the Western District of New York. Additionally, COTA asks CS-1 on multiple occasions to send SMS text messages to her containing pertinent information. A

11

search of **Cell Phones 1 & 2** may shed light and further investigative efforts to identify these individuals in addition to uncovering other stored, pertinent SMS/MMS message data.

24.      Furthermore, as stated above, your affiant has reviewed recorded calls across multiple phone numbers (four different numbers between WILLIAMS and COTA). Based upon my training and experience, dealers of narcotics change phone numbers and devices regularly but often times will keep older, previously used devices that may store old contacts, pictures, recordings, or other data that they may need to recall to further the conspiracy. In the context of this investigation, it is believed that **Cell Phone 2** was currently in use by COTA and that **Cell Phone 1** is an older device or alternate phone also used by COTA.

## The Use of Cellular Telephones By Drug Traffickers

25.      Through my experience, I am familiar with how cellular telephones are utilized by drug traffickers to engage in and facilitate illegal drug trafficking.  I know that cellular telephones are tools of the drug trade.  I have previously reviewed evidence obtained from searches of cellular telephones seized from members of drug trafficking organizations.  These searches have resulted in the recovery of significant evidence tending to show involvement in drug trafficking, including call logs showing contacts with co-conspirators, relevant text messages among co-conspirators and customers, contact lists and address books containing names and telephone numbers of co-conspirators and customers, and photographs of co-conspirators, firearms, drugs and large sums of money.

26.    Based on my training and experience, and participation in this and other narcotics investigations, I know that:

27.    Narcotics traffickers often employ cellular telephones as a means of communicating with each other. Narcotics traffickers often utilize cellular telephones to relay a variety of illicit information including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, purchase prices for the sale of narcotics, or other information designed to facilitate criminal activity. Narcotics traffickers frequently maintain in the memories of their cellular telephones the names, telephone numbers, recorded messages, photographs and other items of information concerning themselves and their co-conspirators, meaning individuals associated in their criminal activities. Narcotics traffickers commonly maintain cellular telephones and other communication devices in their residences that are utilized to further their narcotics trafficking activities.

(a)    People who illegally purchase, possess or engage in trafficking of narcotics commonly take, or cause to be taken, photographs/videos of themselves, their associates, their property, or their firearms, and usually maintain these photographs/videos in electronic storage mediums, including cellular camera telephones.

(b)    Cellular telephones frequently have voice mail and telephone directory features, as well as methods to learn the telephone number associated with each cellular telephone. Cellular telephones also typically contains records of recent call activity, both incoming and outgoing calls, and lists of stored telephone numbers and other identifying information, such as names.

13

(c)    Cellular telephones typically have voice mail and/or text messaging features which permit the cellular telephone user to send and receive voice mail and/or text messages. Voice mail and text messages are typically stored on the computer network of the provider of the cellular telephone's telephone service, which network is external to the cellular telephone. Sent and received messages may also be stored on the cellular telephone itself.

(d)    Cellular telephones with camera functions permit the cellular telephone user to take photographs and/or videos that are stored on the cellular telephone itself.

(e)    The information described above usually remains accessible in the cellular telephone's memory card even if the cellular telephone has lost all battery power, or has not been used for an extended period of time.

### Conclusion

28.    Based on the above, and upon my training and experience, I believe that probable cause exists to believe that **Cell Phones 1 & 2** contain information that constitutes records, fruits, instrumentalities, and evidence of a crime, to wit, violations of 21 U.S.C. §§ 841(a)(1) (unlawful distribution of a controlled substance and possession of a controlled substance with intent to distribute) and 846 (conspiracy to possess with intent to distribute, and to distribute, a controlled substance), including the specific information and data set forth in Attachment B, Schedule of Items to be Seized.  Accordingly, it is respectfully requested that the Court issue a warrant authorizing law enforcement officers to search **Cell Phones 1**

14

& **2**, as described in Attachment A, for evidence of the above violations, as set forth in Attachment B.

William MacMillan
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this
12 day of July, 2017.

HONORABLE JONATHAN W. FELDMAN
United States Magistrate Judge

15